MUTUAL SAVINGS AND LOAN v NATIONAL BANK OF
DETROIT

Docket No. 115028. Submitted April 4, 1990, at Lansing. Decided
October 1, 1990. Leave to appeal applied for.

National Bank of Detroit issued a cashier's check in the amount
of $16,682.40 to Cheryl Harmon on behalf of N.C. Servo Tech-
nology, Inc. The application for the check indicated that Moog,
Inc., was the intended payee and Stantz Electronics was the
purchaser. The check itself designated Moog, Inc., as payee and
Stantz Electronics as remitter. On October 24, 1987, Donald
Stantz presented the check for deposit to open a personal
account at a branch office of Mutual Savings and Loan. Because
Stantz Electronics was not the named payee, Mutual required
Stantz to endorse the check "not used for original purpose,
Stantz Electronics, /s/ Donald Stantz." The check was pro-
cessed through normal banking channels and was received by
NBD on October 26, 1987. NBD claims that it orally dishonored
the check prior to the midnight deadline on October 27. The
check itself was placed in the hands of the Federal Reserve
Bank on November 3 for return to Mutual and was received by
Mutual on November 10. Mutual brought in Saginaw Circuit
Court an action to recover the amount of the check from NBD,
claiming that NBD wrongfully dishonored the check by failing
to effectively dishonor the item prior to the midnight deadline.
NBD brought a third-party action against Stantz. NBD, in re-
sponse to Mutual's claim, asserted that it had made a timely
oral dishonor of the check, that its oral dishonor was effective
and that, in any event, Mutual had breached its presentment
and transfer warranties. Mutual moved for summary disposi-
tion against NBD. The trial court, Robert S. Gilbert, J., granted
the motion. NBD appealed.

The Court of Appeals held:

1. The record fails to establish that NBD orally dishonored the

REFERENCES

Am Jur 2d, Banks §§ 310, 583.

Construction and effect of UCC secs. 4-301 and 4-302 making payor
bank accountable for failure to act promptly on item presented
for payment. 22 ALR4th 10.

check prior to midnight on October 27, the limit of the time frame allowed under the Uniform Commercial Code for dishonor of a check forwarded through the banking system. In any event, the language of the UCC clearly implies that dishonor by a bank under these circumstances must be in writing. Thus, even if an oral notice of dishonor had been made in a timely manner, it would not have been effective.

2. The underlying purpose of the UCC is to promote the ease of completing commercial transactions. Accordingly, the owner of a cashier's check, prior to putting it into the stream of commerce, may cancel the cashier's check by endorsing the same and presenting it for payment. Since the UCC permits presentment by placing the item in the hands of a collecting bank, Mutual could properly accept the cashier's check for collection where, as here, there were no circumstances to cause Mutual to make inquiry as to whether Stantz Electronics was the owner of the item, whether Donald Stantz lacked the authority to sign on behalf of Stantz Electronics or whether he lacked the authority to divert the funds to his own account.

Affirmed.

1. BANKS AND BANKING — CHECKS — MIDNIGHT DEADLINE — NOTICE OF DISHONOR.

A payor bank must, before the midnight deadline, pay or return a check drawn upon it or send notice of dishonor of the check; such a notice of dishonor must be in writing to be effective (MCL 440.4302; MSA 19.4302).

2. BANKS AND BANKING — CHECKS — CASHIER'S CHECKS — CANCELLATION OF A CASHIER'S CHECK.

The owner of a cashier's check, prior to placing the item in the stream of commerce, may cancel the same by endorsing and presenting it; a depository bank in accepting for collection a cashier's check endorsed by the designated remitter of the item is entitled to rely on a presumption of the purchaser's continuing ownership.

*William S. Bovill,* for plaintiff.

*Charles Milne,* for defendant.

Before: WAHLS, P.J., and MARILYN KELLY and G. S. ALLEN,* JJ.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

MARILYN KELLY, J. Defendant National Bank of Detroit (NBD) appeals as of right from an order granting summary disposition to plaintiff, Mutual Savings and Loan. MCR 2.116(C)(10). We affirm.

On October 23, 1987, NBD issued a cashier's check to Cheryl Harmon on behalf of N.C. Servo Technology, Inc., in the amount of $16,682.40. The application for the check indicated that the intended payee was Moog, Inc., and the purchaser was Stantz Electronics. On the check, Moog was designated as the payee and Stantz Electronics was the remitter. On October 24, 1987, Donald Stantz presented the check for deposit to open a personal account at a branch office of Mutual. Since Stantz Electronics was not the named payee, Mutual required Stantz to make the following endorsement:

Not used for original purpose
Stantz Electronics
/s/ Donald Stantz

The check was processed through the normal banking channels and received by NBD on October 26, 1987. A provisional settlement was made in favor of Mutual, and NBD's account was debited accordingly. NBD claims that it orally dishonored the check before expiration of the midnight deadline of October 27. Teresa Gokey, an employee of Mutual, stated in her deposition that an NBD employee told her sometime between October 27 and 29 that the check was being returned. Then, in a subsequent affidavit, she stated that she did not receive oral notice until October 29. NBD actually returned the check to the Federal Reserve Bank on November 3. Plaintiff received it November 10.

On appeal, NBD claims the court erred in grant-

ing Mutual's motion for summary disposition. It insists the oral notice of dishonor was timely and sufficient to satisfy the midnight deadline.

Articles 3 and 4 of the Uniform Commercial Code govern transactions relating to bank deposits, collections and commercial paper. MCL 440.3101 *et seq.*; MSA 19.3101 *et seq.* Section 4-302 provides that a payor bank must take action within a prescribed time period in order to avoid liability for the amount of a cashier's check. It states:

> In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of section 4207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
>
> (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline. [MCL 440.4302; MSA 19.4302.]

The midnight deadline is midnight on the next banking day following the banking day on which the payor bank receives the item. UCC 4-104(h), MCL 440.4104(h); MSA 19.4104(h).

In this case, the deadline was midnight on October 27. NBD claims it gave oral notice of dishonor prior to the deadline. This contention is not supported by the evidence. Ms. Gokey clarified her deposition testimony and indicated oral notice of dishonor was not received until October 29.

Even if there were a question of fact regarding the date of the oral notice, we conclude that, under the UCC, oral notice of dishonor is not sufficient.

There is no Michigan case law addressing the sufficiency of oral notice of dishonor under the UCC. Other jurisdictions have rendered decisions which differ on the issue. Oral notice was held insufficient in Utah in 1975 but sufficient ten years later in Indiana. *Valley Bank & Trust Co v First Security Bank of Utah,* 538 P2d 298 (Utah, 1975); *Yoder v Cromwell State Bank,* 478 NE2d 131 (Ind App, 1985).

The Code at § 3-508 permits notice of dishonor to be oral or written. MCL 440.3508; MSA 19.3508. However § 4-302(a) states that the payor bank must pay, return, or "send notice of dishonor" before the midnight deadline. The definition of send "in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed . . . ." UCC 1-201(38), MCL 440.1201(38); MSA 19.1201(38). This definition necessarily implies delivery of a written instrument. Thus we find a conflict between § 3-508 and § 4-302 with respect to the propriety of oral notice. In the event of a conflict, Article 4 provisions govern. UCC 4-102, MCL 440.4102; MSA 19.4102. Oral notice of dishonor is not permitted under § 4-302. Thus NBD is liable for the amount of the check, unless it can establish a valid defense.

NBD alleges such a defense. It contends Mutual breached its presentment and transfer warranties under § 4-207 by failing to obtain an authorized signature and by presenting an item outside the chain of title. MCL 440.4207; MSA 19.4207. It claims that Stantz Electronics, as remitter, was not a proper endorser of the cashier's check, that the actual owner was N.C. Servo.

A "cashier's check" is a bill of exchange drawn by a bank upon itself. The bank becomes both the

drawee and the drawer, rather than merely the drawee as in the ordinary check scenario. *Bruno v Collective Federal Savings & Loan Ass'n,* 147 NJ Super 115; 370 A2d 874 (1977); *Swiss Credit Bank v Virginia National Bank-Fairfax,* 538 F2d 587 (CA 4, 1976). A cashier's check, therefore, is accepted by the bank upon issuance and is a primary obligation of the issuing bank, rather than of the purchaser of the check. *Munson v American National Bank & Trust Co of Chicago,* 484 F2d 620 (CA 7, 1973); *Pennsylvania v Curtiss National Bank of Miami Springs, Florida,* 427 F2d 395 (CA 5, 1970). By issuing a cashier's check, the bank promises to draw the amount of the check from its own resources and to pay it upon demand. Consequently, this promise to pay ordinarily cannot be countermanded. *Florida Frozen Foods, Inc v National Commercial Bank & Trust Co,* 81 AD2d 978; 439 NYS2d 771 (1981); *Wertz v Richardson Heights Bank & Trust,* 495 SW2d 572 (Tex, 1973).

A cashier's check is generally acquired for the purpose of assuring a payee that the necessary funds contemplated by the transaction are available. *Gillespie v Riley Management Corp,* 59 Ill 2d 211; 319 NW2d 753 (1974). Until delivery of the cashier's check to the named payee, the purchaser remains the "owner" and retains the right to cancel. *Gillespie, supra.* Thus a bank is justified in relying on the presumptions of continued ownership and lack of delivery to the payee when presented with a cashier's check by the purchaser. These presumptions exist except when unusual circumstances raise a duty of inquiry. *Gillespie, supra; Bunge Corp v Manufacturers Hanover Trust Co,* 31 NY2d 223; 335 NYS2d 412 (1972); *Scharz v Twin City State Bank,* 201 Kan 539; 441 P2d 897 (1968).

The entitlement to rely on a presumption of

continued ownership is necessary and appropriate, since a contemplated transaction sometimes fails to materialize. In such an event, the purchaser is left with a cashier's check which he no longer wishes to deliver. It would pose an unwarranted commercial burden to require the purchaser then to obtain the endorsement of the named payee in order to have the cashier's check honored or cancelled. *Gillespie, supra.* Therefore, until the check is placed in the stream of commerce, the purchaser must be able to cancel it. *Id.*

Extending this principle to cover the breadth of modern commercial transactions, it is desirable to permit the cashier's check to be honored at the bank of the purchaser's choice. It would be burdensome to require the purchaser instead to return the check to the issuing bank, cancel it and receive a new check. It is far preferable to permit him, upon sufficient identification, to use the cashier's check at another bank for a purpose other than that which he originally intended. This extension is in keeping with the purpose and policies of the UCC. UCC 1-102, MCL 440.1102; MSA 19.1102. Only a limited burden is imposed on the drawee bank, as it already has received the funds to cover the check. Moreover the drawee bank accepted the check for payment upon issuance, thus obligating itself to make good the face amount upon demand.

Since the depository bank is entitled to rely on the presumption of the purchaser's continuing ownership, there can be no breach of warranty under § 4-207 for lack of title. The only exception exists where an unusual circumstance gives rise to a duty on the part of the depository bank to inquire into the purchaser's ownership.

In this case, the cashier's check stated on its face that Stantz Electronics was the owner of the check. The check was endorsed "not used for in-

tended purpose." There is no evidence of any unusual circumstance that should have indicated to Mutual that Stantz Electronics was not the owner, purchaser, and remitter of the cashier's check. Therefore, no duty arose to inquire as to the authority of Stantz to use the check for another purpose. There is nothing to indicate that Donald Stantz lacked authority to sign on behalf of his company and to divert the company's funds to his own account.

NBD failed to establish the existence of a valid breach of warranty defense under § 4-207 sufficient to relieve it of strict liability for the amount of the cashier's check. The trial court did not err.

Affirmed.