# STATE OF MICHIGAN

# COURT OF APPEALS

ALLY FINANCIAL, INC.,

Plaintiff-Appellant,

v

STATE TREASURER, STATE OF MICHIGAN,
and DEPARTMENT OF TREASURY,

Defendants-Appellees.

FOR PUBLICATION
September 20, 2016
9:05 a.m.

No. 327815
Court of Claims
LC No. 13-00049-MT

---

SANTANDER CONSUMER USA, INC.,

Plaintiff-Appellant,

v

STATE TREASURER, STATE OF MICHIGAN,
and DEPARTMENT OF TREASURY,

Defendants-Appellees.

No. 327832
Court of Claims
LC No. 13-000114-MT

---

SANTANDER CONSUMER USA, INC.,

Plaintiff-Appellant,

v

STATE TREASURER, STATE OF MICHIGAN,
and DEPARTMENT OF TREASURY,

Defendants-Appellees.

No. 327833
Court of Claims
LC No. 13-000113-MT

---

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

-1-

In Docket No. 327815, plaintiff, Ally Financial, Inc. (Ally), appeals as of right from an order granting defendants, the State Treasurer, the State of Michigan, and the Department of Treasury (the Department) summary disposition pursuant to MCR 2.116(C)(10) and determining that there was no genuine issue of material fact that Ally was not entitled to a "bad debt" tax credit under MCL 205.54i. In Docket Nos. 327832 and 327833, plaintiff, Santander Consumer USA, Inc. (Santander), appeals as of right from two separate, though nearly identical, orders granting the Department summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), determining that Santander was likewise not entitled to a "bad debt" tax credit under MCL 205.54i. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiffs are financing companies that financed the purchase of motor vehicles from various retailers (dealerships) around the state. Under the retail installment contracts, car purchasers agreed to pay the entire amount financed, including sales tax, over a period of time. The dealerships assigned all of their rights under the installment contracts to plaintiffs, which included the right to enforce the debt and repossess collateral. In exchange, plaintiffs paid the retailers the entire amount financed under the installment contracts, including the portion of the financed sales tax. The dealerships then remitted the sales tax due to the state. However, some purchasers would default on their retail installment contracts, meaning that they did not repay the full amount of the purchase price or sales tax. In some instances plaintiffs repossessed the vehicles and sold them, applying the sale proceeds to the remainder of the purchase price and sales tax. Still, there were times when the contracts had unpaid balances even after the sale. Once plaintiffs determined such installment contracts worthless, they claimed the remaining balances as "bad debts" under § 166 of the Internal Revenue Code, 26 USC 166, on their federal tax returns.

Plaintiffs sought refunds for bad debts and filed suit after the Department denied the refunds. The Department sought summary disposition in all three cases. It noted that claiming a debt as a bad debt under § 166 of the Internal Revenue Code was not the sole determining factor for whether a claimant was entitled to a bad debt deduction under MCL 205.54i; rather, an entity claiming a refund must satisfy the specific requirements set forth in §54i. The Department denied that refunds were owed because plaintiffs had included repossessed property in its claim and repossessed property was specifically excluded under MCL 205.54i(1)(a), *DaimlerChrysler Services of North America, LLC,* unpublished opinion per curiam of the Court of Appeals, issued January 21, 2010 (Docket No. 288347), and Revenue Administrative Bulletin (RAB 1989-61). Additionally, the Department maintained that plaintiffs failed to submit proper documentation that the sales taxes had been paid in RD-108 forms (Application for Michigan Title & Registration-Statement of Vehicle Sale). Finally, specifically as to Ally, the Department argued that Ally's elections forms were not sufficient to determine whether Ally or the dealerships were entitled to the refund. The Department noted that under MCL 205.54i, either a retailer *or* a lender could seek a refund for sales tax on bad debts, but that there had to be a clear election between the retailer and the lender as to who would be entitled to pursue the refund. The Department argued that although Ally had recently provided several documents purporting to be election agreements with retailers, those documents were signed and dated *after* the date Ally wrote off the bad debt for federal income tax purposes. Because the election forms applied only to "accounts *currently* existing or created in the *future*," they were not applicable to the already

written-off loans. Moreover, the Department argued that Ally could not simply rely on the written assignment of retail installment contracts between the retailers and Ally.

The Court of Claims entered three separate orders granting the Department summary disposition. In the Ally case, summary disposition was granted pursuant to MCR 2.116(C)(10) and in the Santander cases, summary disposition was granted pursuant to both MCR 2.116(C)(8) and (C)(10).

The Court of Claims first addressed whether Ally's written elections with the retailers satisfied the statute and concluded that they did not because they applied only to "currently existing" loans and, therefore, did not cover the accounts for which Ally sought a deduction. The Court of Claims then went on to find that the Department could require a claimant to submit an RD-108 form where the legislature had empowered the Department to determine what evidence it needed. Finally, while recognizing it as a non-binding case, the Court of Claims cited to and relied upon the *DaimlerChrysler* case, when it concluded that repossessed property was excluded as bad debt.

## II. STANDARDS OF REVIEW

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo on appeal. *Urbain v Beierling*, 301 Mich App 114, 121; 835 NW2d 455 (2013).

> In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014), lv den 497 Mich 959 (2015) (internal citations omitted).]

Additionally, in the Santander cases, the trial court granted the Department summary disposition pursuant to MCL 2.116(C)(8). Unlike a motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim, "[a] motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and allows consideration of only the pleadings. The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

This case also involves statutory interpretation. "Statutory interpretation is a question of law that we review de novo." *Hecht v Nat'l Heritage Academies., Inc*, ___ Mich ___; ___ NW2d ___ (Docket No. 150616, decided July 26, 2016).

Likewise, in Ally's case, contract interpretation presents a question of law, which requires de novo review. *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354 (2010).

### III. THE BAD DEBT STATUTE

The facts of the cases are not in issue or disputed. At issue is the Court of Claims' interpretation of Michigan's "bad debt" tax credit provision. MCL 205.54i provides, in relevant part:

(1) As used in this section:

(a) "Bad debt" means any portion of a debt that is related to a sale at retail taxable under this act for which gross proceeds are not otherwise deductible or excludable and that is eligible to be claimed, or could be eligible to be claimed if the taxpayer kept accounts on an accrual basis, as a deduction pursuant to section 166 of the internal revenue code, 26 USC 166. A bad debt shall not include any finance charge, interest, or sales tax on the purchase price, uncollectible amounts on property that remains in the possession of the taxpayer until the full purchase price is paid, expenses incurred in attempting to collect any account receivable or any portion of the debt recovered, any accounts receivable that have been sold to and remain in the possession of a third party for collection, and repossessed property.

(b) Except as provided in subdivision (c), "lender" includes any of the following:

(i) Any person who holds or has held an account receivable which that person purchased directly from a taxpayer who reported the tax.

(ii) Any person who holds or has held an account receivable pursuant to that person's contract directly with the taxpayer who reported the tax.

***

(e) "Taxpayer" means a person that has remitted sales tax directly to the department on the specific sales at retail transaction for which the bad debt is recognized for federal income tax purposes or, after September 30, 2009, a lender holding the account receivable for which the bad debt is recognized, or would be recognized if the claimant were a corporation, for federal income tax purposes.

(2) In computing the amount of tax levied under this act for any month, a taxpayer may deduct the amount of bad debts from his or her gross proceeds used for the computation of the tax. The amount of gross proceeds deducted must be charged off as uncollectible on the books and records of the taxpayer at the time the debt becomes worthless and deducted on the return for the period during which the bad debt is written off as uncollectible in the claimant's books and records and must be eligible to be deducted for federal income tax purposes. For purposes of this section, a claimant who is not required to file a federal income tax return may deduct a bad debt on a return filed for the period in which the bad debt becomes worthless and is written off as uncollectible in the claimant's books and records and would be eligible for a bad debt deduction for federal income tax purposes if the claimant was required to file a federal income tax return. If a consumer or

-4-

other person pays all or part of a bad debt with respect to which a taxpayer claimed a deduction under this section, the taxpayer is liable for the amount of taxes deducted in connection with that portion of the debt for which payment is received and shall remit these taxes in his or her next payment to the department. Any payments made on a bad debt shall be applied proportionally first to the taxable price of the property and the tax on the property and second to any interest, service, or other charge.

(3) After September 30, 2009, if a taxpayer who reported the tax and a lender execute and maintain a written election designating which party may claim the deduction, a claimant is entitled to a deduction or refund of the tax related to a sale at retail that was previously reported and paid if all of the following conditions are met:

(a) No deduction or refund was previously claimed or allowed on any portion of the account receivable.

(b) The account receivable has been found worthless and written off by the taxpayer that made the sale or the lender on or after September 30, 2009.

(4) Any claim for a bad debt deduction under this section shall be supported by that evidence required by the department. The department shall review any change in the rate of taxation applicable to any taxable sales by a taxpayer claiming a deduction pursuant to this section and shall ensure that the deduction on any bad debt does not result in the taxpayer claiming the deduction recovering any more or less than the taxes imposed on the sale that constitutes the bad debt.

The issues on appeal center on three primary considerations: (1) whether Ally's election forms constitute "a written election designating which party may claim the deduction" for purposes of MCL 205.54i(3); (2) whether the Department may limit a taxpayer's ability to prove its right to a refund by requiring the taxpayer to submit RD-108 documents to the exclusion of any other method of proof under MCL 205.54i(4); and, (3) whether "bad debt" includes repossessed property under MCL 205.54i(1)(a).

## IV. ALLY'S WRITTEN ELECTION FORMS

Ally argues that the trial court erred when it concluded that Ally's written elections did not satisfy the requirements of the bad debt statute. We disagree.

Relevant to this issue, MCL 205.54i(3) provides:

(3) After September 30, 2009, if a taxpayer who reported the tax and a lender execute and maintain a written election designating which party may claim the deduction, a claimant is entitled to a deduction or refund of the tax related to a sale at retail that was previously reported and paid if all of the following conditions are met:

(a) No deduction or refund was previously claimed or allowed on any portion of the account receivable.

(b) The account receivable has been found worthless and written off by the taxpayer that made the sale or the lender on or after September 30, 2009.

The plain language of the statute requires that a taxpayer seeking a refund maintain a written election designating which party may claim the deduction. Our Court has recently admonished:

> The proper role of the judiciary is to interpret and not write the law. Accordingly, this Court enforces a statute as written if the statutory language is unambiguous. While a term must be applied as expressly defined within a given statute, undefined words are to be given their plain and ordinary meaning, taking into account the context in which the words are used. We may consult a dictionary in ascertaining plain meanings. This Court must avoid an interpretation that would render any part of a statute surplusage or nugatory. [*Williams v Kennedy*, ___ Mich App ___; ___ NW2d ___; (Docket No. 325267, issued August 2, 2016), slip op, p 2.]

Here, the statutory language creates a condition precedent to a tax refund. Specifically, "*if* a taxpayer who reported the tax and a lender execute and maintain a written election designating which party may claim the deduction, a claimant is entitled to a deduction or refund of the tax related to a sale at retail that was previously reported and paid . . ." MCL 205.54i(3). Our Court has noted: "The Legislature's use of the word 'if' at the start of the subsection and the relevant clause is critical. *The Random House Webster's College Dictionary* (2001) offers several definitions of 'if,' the more pertinent being: '1. in case that; granting or supposing that; on condition that[.]'" *In re Casey Estate*, 306 Mich App 252, 260; 856 NW2d 556 (2014), lv den 497 Mich 1027 (2015), cert den 136 S Ct 814 (2016). Therefore, in this case, in the absence of a written election designating which party may claim a deduction, there is no entitlement to a refund.

To satisfy this requirement, Ally and the dealerships entered into two similar written elections. The first provided:

> Entitlement to Tax Refund or Deduction on Accounts Under MCL 205.54i. The Retailer and the Lender agree that the Lender is the party entitled to claim any potential sales tax refunds or deductions under MCL 205.54i as a result of bad debt losses charged off after September 30, 2009, on any and all Accounts currently existing or created in the future which have been assigned from the Retailer to the Lender. The Retailer agrees that it has not and will not claim a deduction or refund under MCL 205.54i with respect to any Accounts currently existing or created in the future and hereby relinquishes to the Lender all rights to the Accounts and all rights to claim such deductions or refunds.

The second provided:

> Entitlement to Tax Refund or Deduction on Accounts Under MCL 205.54i. The Retailer and the Creditor agree and elect that the Creditor is the party entitled to

claim any potential sales tax refunds or deductions under MCL 205.54i as a result of bad debt losses charged off after September 30, 2009, on any and all Accounts currently existing or created in the future which have been funded by the Creditor and assigned to the Creditor by the Retailer. The Retailer agrees that it has not and will not claim a deduction or refund under MCL 205.54i with respect to any Accounts currently existing or created in the future which have been funded by the Creditor and assigned to the Creditor by the Retailer and hereby relinquishes to the Creditor all rights to the Accounts currently existing or created in the future which have been funded by the Creditor and assigned to the Creditor by the Retailer.

Just as the language in the bad debt statute is clear, the language of the parties' later-drafted written election forms is equally clear and applies to "accounts currently existing or created in the future." We reject Ally's request to look beyond the plain language of the forms and consider the relevant surrounding circumstances. Because "an unambiguous contractual provision is reflective of the parties' intent as a matter of law," *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership*, 295 Mich App 99, 111; 812 NW2d 799 (2011), extrinsic evidence of the parties' intent may be considered only if the language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003). "A contract is said to be ambiguous when its words may reasonably be understood in different ways." *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999) (internal quotation marks omitted). The forms were not ambiguous.

> When parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts, if the contract is not contrary to public policy. A contract must be interpreted according to its plain and ordinary meaning.

> Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. [*Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 386; 835 NW2d 593 (2013) (internal quotation marks and citations omitted).]

The Court of Claims aptly noted: "Plaintiff's interpretation [of its election agreements] gives no meaning to the phrase 'currently existing' in the election agreements. The sheer repetition of the phrase three times in a single paragraph in the 'Creditor' version of the agreement, including twice within a single sentence, indicates that the parties intended the phrase

to have some significance."[1]  "Just as courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory, courts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468.  Because there was no ambiguity, the Court of Claims did not err when it found that Ally's written elections did not satisfy the requirements of the bad debt statute.

## V.  RD-108 FORMS

Both plaintiffs contend that the Court of Claims erred when it found that the Department was within its right to require plaintiffs to submit RD-108 forms as proof that the taxes had, in fact, been paid.  We disagree.

As previously stated, MCL 205.54i(4) provides:

(4) Any claim for a bad debt deduction under this section shall be supported by that evidence required by the department. The department shall review any change in the rate of taxation applicable to any taxable sales by a taxpayer claiming a deduction pursuant to this section and shall ensure that the deduction on any bad debt does not result in the taxpayer claiming the deduction recovering any more or less than the taxes imposed on the sale that constitutes the bad debt.

The Court of Claims found that the Department could require a claimant to submit an RD-108 form as proof that the taxes had been paid.  It disagreed that such a requirement was an artificial barrier and concluded:  "In MCL 205.54i(4), the Legislature specified that the deduction must be supported by evidence required by the Department.  This Court will not overrule the Department's judgment in a matter that the Legislature has explicitly placed in the Department's control.  Even assuming that the information is available in the Department's records, the claimant has the obligation to establish the right to a refund."

The Court of Claims properly ruled that plaintiffs failed to demonstrate a right to a refund or an exemption.  "Exemption from taxation effects the unequal removal of the burden generally placed on all taxpayers to share in the support of government.  For that reason, exemption is the antithesis of tax equality, which justifies placing the burden of showing entitlement to an exemption on the taxpayer." *Andrie Inc v Treasury Dep't*, 496 Mich 161, 171 n 26; 853 NW2d 310 (2014) (internal quotation marks and citations omitted).  Deductions are similarly treated. *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 473-474; 838 NW2d 736 (2013), lv den 495 Mich 1000, recon den 497 Mich 949 (2015).

---

[1] Nor was the Court of Claims persuaded that the financing contracts themselves sufficed as written elections:  "The assignment from the dealership to the financing company does not specify 'which party may claim the deduction,' as an election form must to satisfy MCL V05.54i(3)." While Ally pursued this argument in the Court of Claims, it appears to have abandoned the argument on appeal.

In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute, the favor would be extended beyond what was meant. [*Menard*, 302 Mich App at 474-475, quoting *City of Detroit v Detroit Commercial College*, 322 Mich 142, 148–149, 33 NW2d 737 (1948)

In rejecting an argument by retailers that would have placed the retailers in the same place as "taxpayers" or financing companies under the statute, the *Menard* Court addressed the bad debt statute and confirmed that not only does the taxpayer bear the burden of proof, but courts must adhere to the plain language of the statute:

[O]ur role is to discern the legislative intent from the plain language of the amended statute, enforce the statute as written if the language is clear and unambiguous, or to construe the statute as necessary to give effect to every word in the statute and avoid a construction that would render part of the statute surplusage or nugatory. Because a tax exemption or deduction is sought by plaintiffs, they have the burden of proof, the statute is strictly construed against them as the taxpayer, and the exemption must be expressed in clear and unambiguous terms. [*Menard*, 302 Mich App at 479–480.]

Given the rules regarding statutory construction in general, as well the rules applicable to tax exemption and deductions, the Court of Claims did not err when it found that the Department was within its right to require plaintiffs to submit RD-108 forms as proof that the taxes had, in fact, been paid. The plain language of the statute clearly provides that a "claim for a bad debt deduction under this section shall be supported by that evidence *required by the department*." The Department was granted authority to determine the evidence necessary to support the refund. Additionally, contrary to plaintiffs' arguments, the Department was not obligated to promulgate a rule that a taxpayer submit a RD-108 form to demonstrate payment of sales tax under the administrative procedures act, MCL 24.201 *et seq.*, because it was exercising its discretionary authority, which is not subject to formal rule-making and there is no evidence that the Department lacked a rational basis for its policy. See *Guardian Indus Corp v Dep't of Treasury*, 198 Mich App 363, 382; 499 NW2d 349 (1993). In an unpublished case, this Court has held:

we reject plaintiffs' position that defendant was required to promulgate an administrative rule under the procedures set forth in the Administrative Procedure Act, MCL 24.201 *et seq.,* in order to enforce its policy. Defendant's policy is an exercise of its discretionary authority, and defendant is not required to promulgate a rule in order to enforce discretionary authority that is granted to it by the Legislature. See *Trinova Corp v Dep't of Treasury,* 433 Mich 141, 164–165 n 26; 445 NW2d 428 (1989) (finding that clearly expressed legislative procedures and requirements are "in no way dependent upon the adoption of formal procedural rules"). [*CMS Energy Corp v Dep't of Treasury,* unpublished per curiam opinion

of the Court of Appeals, issued October 15, 2013 (Docket No. 309172), slip op, p
6.]

Though *CMS Energy* is an unpublished case and does not carry the weight of precedent, it may
be considered helpful and instructive. MCR 7.215(C)(1); *Paris Meadows, LLC, v Kentwood*,
287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). Here, the fact that the Department has not
engaged in formal rule-making does not mean that it has been divested of discretion in
determining what evidence must be produced to support a taxpayer's claim under the bad credit
statute.

## VI. REPOSSESSED PROPERTY

Finally, both plaintiffs argue that the Court of Claims erred when it concluded that
repossessed property was excluded as a deduction under the bad debt statute. We disagree.

Under MCL 205.54i(1)(a) defines "bad debt" as:

> any portion of a debt that is related to a sale at retail taxable under this act for
> which gross proceeds are not otherwise deductible or excludable and that is
> eligible to be claimed, or could be eligible to be claimed if the taxpayer kept
> accounts on an accrual basis, as a deduction pursuant to section 166 of the internal
> revenue code, 26 USC 166. *A bad debt shall not include* any finance charge,
> interest, or sales tax on the purchase price, uncollectible amounts on property that
> remains in the possession of the taxpayer until the full purchase price is paid,
> expenses incurred in attempting to collect any account receivable or any portion
> of the debt recovered, any accounts receivable that have been sold to and remain
> in the possession of a third party for collection, and *repossessed property*.
> [Emphasis added.]

The Department considers all repossessed property to be excluded as bad debt while
plaintiffs ask for a kinder interpretation to allow for a pro rata deduction. In granting the
Department summary disposition, the Court of Claims noted:

> As an additional basis for granting summary disposition, the Department
> argues that plaintiff has included repossessed property in its bad debt refund
> claim. . . . Plaintiff contends that the Department's interpretation is contrary to the
> approach that other states have taken with respect to similar statutory language.
> For example, plaintiff cites Wisconsin's statute defining "bad debt" as:
>
>> the portion of the sales price or purchase price that the seller has
>> previously reported as taxable under this subchapter, and for which the
>> seller has paid the tax, and that the seller may claim as a deduction under
>> section 166 of the Internal Revenue Code. "Bad debt" does not include
>> financing charges or interest, sales or use taxes imposed on the sales price
>> or purchase price, uncollectible amounts on tangible personal property or
>> items, property, or goods under s. 77.52(1)(b), (c), or (d) that remain in the
>> seller's possession until the full sales price or purchase price is paid,
>> expenses incurred in attempting to collect any debt, debts sold or assigned

to 3rd parties for collection, and *repossessed property* or items. [WSA 77.585(1)(a) (emphasis added).]

The Wisconsin Administrative Code 11.30 states in part:

> When property, items, or goods on which a receivable exists are repossessed, a bad debt deduction is allowable only to the extent that the seller sustains a net loss of the sales price upon which tax was paid. A net loss occurs when the sum of the pro rata portion of all payments, credits and the wholesale value of the repossessed property, item, or good attributable to the cash sales price of the property, item, or good, is less than the cash sales price upon which sales or use tax was paid.

Thus, a portion of bad debt from repossessed property may be deducted in Wisconsin. Plaintiff advocates that a bad debt deduction should not be disallowed in its entirety where property has been repossessed. Rather, the amount of the bad debt should be reduced by the value of the repossessed property.

Nevertheless, plaintiff recognizes that the Department's interpretation is consistent with the approach taken by the Court of Appeals in *DaimlerChrysler* . . . Plaintiff contends that the Court "did not engage in any real analysis of the statute, but instead simply deferred to the Department's position in [Revenue Administrative Bulletin] 1989-61."

Although under MCR 7.215(C)(1) the unpublished decision is not binding, this Court agrees with its straightforward analysis. Until such time as the Legislature amends the statute or the Department adopts regulations like those in Wisconsin, this Court is not persuaded that it should depart from the interpretation adopted by the Department and affirmed by the Court of Appeals in *DaimlerChrysler.*

The Court of Claims did not err in affording the Department consideration when interpreting the bad debt statute. "[A]gencies' constructions of statutes are entitled to respectful consideration, but are not binding on courts and cannot conflict with the plain language of the statute." *In re Complaint of Rovas*, 482 Mich 90, 108; 754 NW2d 259 (2008). The Court of Claims did not rely exclusively on, nor did it simply defer to, the Department's interpretation. Rather, the Court of Claims also had for its consideration the *DaimlerChrysler* case.

The exact issue of whether repossessed vehicles were includable in the calculation of a refund under the bad debt statute was at issue in *DaimlerChrysler.* Unlike the case at bar, the Court of Claims judge in *DaimlerChrysler* concluded that transactions involving repossessed vehicles *were* includible in the calculation of a refund. *DaimlerChrysler*, slip op, p 3. This Court reversed. After noting the general principles of statutory construction, this Court set forth the exception to the definition of "bad debt" under the statute:

A bad debt does not include:

1) interest or sales tax on the purchase price;

-11-

2) uncollectible amounts on property that remains in the possession of the taxpayer until the full purchase price is paid;

3) expenses incurred in attempting to collect any accounts receivable that have been sold to a third party for collection; and

4) repossessed property.

The plain and unambiguous language of the statute provides that for purposes of the exemption from sales tax, a bad debt does not include . . .repossessed property. [*Id.* at slip op, pp 4-5.]

The *DaimlerChrysler* Court also looked to the Department's historic interpretation:

Defendant has regularly interpreted and applied the bad debt statute consistent with this interpretation. Indeed, a Revenue Administrative Bulletin (RAB) was issued under MCL 205.3(f), which allows defendant to "issue bulletins that index and explain current department interpretations of current state tax laws." See *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 46; 706 NW2d 460 (2005). RAB 1989-61, issued October 3, 1989, provides in relevant part:

The bad debt deduction for sales tax purposes shall not include any amount represented by the following:

* * *

6. Sales tax charged on property that is subsequently repossessed.

While a RAB is only an interpretation of the applicable statute and does not have the force of law, *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 21, 678 NW2d 619 (2004), defendant's interpretation of the statute at issue is entitled to respectful consideration. *Id*. at 654-655. Defendant's longstanding policy with respect to bad debt deductions for repossessed property is consistent with the plain and unambiguous language of the statute and we therefore give it deference.

In sum, we conclude that the Court of Claims erred to the extent that it included transactions involving repossessed property in the calculation of the bad debt deduction. [*DaimlerChrysler,* slip op, pp 4-5 (some internal citations omitted).]

The same is true here. The Department's interpretation is consistent with the plain and unambiguous language of the bad debt statute. Plaintiffs encourage this Court to depart from the plain language of the statute because they believe that failure to do so would be unfair. However, as previously stated, "[t]he proper role of the judiciary is to interpret and not write the law. Accordingly, this Court enforces a statute as written if the statutory language is unambiguous." *Williams,___* Mich App ___, slip op, p 2. "The wisdom of a statute is for the

-12-

Legislature to decide and the law must be applied as written." *Ramsey v Kohl*, 231 Mich App 556, 563; 591 NW2d 221, 225 (1998).

Affirmed. As the prevailing party, the Department may tax costs. MCR 7.219.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien