# STATE OF MICHIGAN

# COURT OF APPEALS

WESSELING & BRACKMANN, PC,

Plaintiff-Appellant,

v

HUNTINGTON BANCSHARES FINANCIAL
CORPORATION, doing business as
HUNTINGTON NATIONAL BANK,

Defendant-Appellee.

UNPUBLISHED
March 6, 2018

No. 334082
Kent Circuit Court
LC No. 15-000245-CB

Before: MURRAY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). For the reasons stated herein, we affirm.

## I. FACTS AND PROCEDURE

This case arises from a fraudulent check scheme perpetrated against plaintiff by a fictitious client, resulting in a $58,155.20 loss to the firm. On September 24, 2014, an individual named Jason Walter contacted plaintiff through the Internet regarding legal services. Douglas J. Brackmann, an attorney and partner in the firm, responded and began communicating with Walter through e-mail and telephone. Walter ultimately retained plaintiff's services, telling Brackmann that he wished to sell a drilling rig with the assistance of a Michigan attorney.

On Friday, October 17, 2014, plaintiff received a letter of intent purportedly outlining the terms of sale for the rig. The letter included what appeared to be a cashier's check in the amount of $380,000 made out to plaintiff, and specified that $200,000 was to be wired to a company called JMS International, LLC. That same day, plaintiff deposited the check in its Interest on Lawyer Trust Account (IOLTA) with defendant.

The following Monday, October 20, 2014, Walter provided Brackmann with instructions for completing the wire transfer, and Brackmann initiated a phone call with defendant to determine the status of the check. He spoke with bank teller Heidi J. McClintic, and asked if the check had cleared the account. Although McClintic used the terms "cleared," "posted," and "available" inconsistently throughout her deposition when describing the conversation,

-1-

Brackmann testified that McClintic explicitly answered: "The check is cleared. You're good to go." Based on McClintic's response, Brackmann completed the paperwork for the wire transfer.

Subsequently, Brackmann learned that the check had been dishonored. Although defendant attempted to stop the wire transfer and recovered some of the funds, $58,155.20 remained lost. As a result, plaintiff initiated this action against defendant, alleging that it should be liable for the unrecovered funds because it falsely represented to plaintiff that the fraudulent check had cleared.

In defendant's motion for summary disposition filed pursuant to MCR 2.116(C)(8) and (10), it argued that MCL 440.4207, Michigan's version of the Uniform Commercial Code (UCC) § 4-207, barred recovery because plaintiff breached its warranty that the cashier's check it deposited was authentic, and defendant accepted the check in good faith. Thus, defendant contended, plaintiff should be liable for the lost funds. Ultimately, the trial court granted the motion pursuant to MCR 2.116(C)(10), finding that no genuine issue of material fact existed that defendant acted in good faith because "[defendant's] employees engaged in commercially appropriate conduct, its employee gave [plaintiff] information that was technically accurate, and the bank made every effort to recover funds lost as a result of the fraudulent cashier's check accepted and deposited by [plaintiff]."

II. ANALYSIS

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because a genuine issue of material fact existed regarding whether defendant acted in good faith when its employee falsely informed plaintiff that the check had cleared. "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing a motion for summary disposition under MCR 2.116(C)(10),[1] this Court "consider[s] the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party." *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth (On Remand)*, 317 Mich App 97, 101; 892 NW2d 451 (2016).

---

[1] Defendant also cited MCR 2.116(C)(8) as a basis for its motion for summary disposition. However, the trial court did not reference MCR 2.116(C)(8) in its opinion and ruled on the motion under MCR 2.116(C)(10). If a trial court looks beyond the pleadings to decide a motion for summary disposition, it was properly brought under MCR 2.116(C)(10). *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 31; 627 NW2d 5 (2001).

Transactions involving bank deposits and collections are controlled by Articles 3 and 4 of the UCC. *Mut S&L v Nat'l Bank of Detroit*, 185 Mich App 591, 594; 462 NW2d 797 (1990). MCL 440.4207, Michigan's version of UCC § 4-207,[2] provides, in relevant part:

> (1) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank all of the following:

> * * *

> (b) That all signatures on the item are authentic and authorized.

> * * *

> (2) If an item is dishonored, a customer or collecting bank transferring the item and receiving settlement or other consideration is obliged to pay the amount due on the item (*i*) according to the terms of the item at the time it was transferred, or (*ii*) if the transfer was of an incomplete item, according to its terms when completed as stated in sections 3115 and 3407. The obligation of a transferor is owed to the transferee and to any subsequent collecting bank that takes the item in good faith. A transferor cannot disclaim its obligation under this subsection by an endorsement stating that it is made "without recourse" or otherwise disclaiming liability.

> (3) A person to whom the warranties under subsection (1) are made and who took the item in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach . . . ."

Accordingly, a collecting bank may avail itself of a defense under UCC § 4-207 as long as it takes a check from a customer in good faith.

There is no dispute that plaintiff transferred a cashier's check to defendant for "other consideration" and, thus, made the warranties implied under MCL 440.4207. Furthermore, there is no dispute that plaintiff breached its warranty that "all signatures [were] authentic and authorized," as the check was later dishonored as counterfeit. Therefore, the controlling issue is whether the actions of defendant during the transaction are sufficient to shift liability for the loss from plaintiff to defendant because of defendant's lack of good faith.

The UCC defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." MCL 440.1201(2)(t). Additionally, official comments to the UCC provide further definition to the "fair dealing" aspect of good faith:

---

[2] MCL 440.4207 adopted the official language of UCC § 4-207.

Although fair dealing is a broad term that must be defined in context, it is clear that it is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care in conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction. [UCC § 3-103,[3] official comment 4 (2002).][4]

We first note that good faith is "a modifier that requires a subject to modify." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133; 839 NW2d 223 (2013).[5] Under UCC § 4-207, good faith modifies the manner in which a bank takes a check. McClintic used the term "cleared" with regard to the check in her conversation with Brackmann three days *after* defendant accepted the check from plaintiff, and plaintiff fails to provide authority for its contention that a bank's duty of good faith with respect to a transfer warranty defense extends to specific statements made by its agents during the "processing" of a check.

Further, the caselaw plaintiff cites from other jurisdictions addressing good faith in the context of a bank's communications with a customer following acceptance of a check, is distinguishable. In those cases, the respective courts concluded that a bank's failure to follow internal procedures when taking checks, or failure to recognize common indicia of fraud, may demonstrate the bank's lack of good faith. Here, there are no facts to indicate that the check bore indicia of counterfeiting. When McClintic spoke with Brackmann, she was not looking at the check nor did she reference anything other than a computer display of the plaintiff's account summary. In fact, McClintic had never seen the check before speaking with Brackmann. Additionally, neither McClintic's nor Brackmann's testimony established that McClintic had information about the internet origin of the check. Brackmann testified that he explained to McClintic only that plaintiff had "received a check[,]" which it then deposited.

For its part, defendant argues that a bank's statement regarding the status of a check does not shift liability from the customer to the bank if the check is later dishonored. In *TCF Nat'l Bank v Adobe Liquidations, LLC*, unpublished per curiam opinion of the Court of Appeals, issued November 24, 2009 (Docket No. 286335), pp 5-7,[6] this Court concluded that communication between a bank employee and a customer about whether a check had cleared was not enough to shift liability to the accepting bank. The Court reasoned that a bank manager's statements that the check had cleared, and subsequent actions to lift a hold on funds, "did not

---

[3] Michigan's version of UCC § 3-103 is at MCL 440.3103.

[4] "The Official Comments appended to each section of the UCC, although lacking the force of law, are useful aids to interpretation and construction." *Yamaha Motor Corp, USA v Tri-City Motors and Sports, Inc*, 171 Mich App 260, 271; 429 NW2d 871 (1988).

[5] This case interprets the UCC's definition of good faith generally, but does not do so in the context of MCL 440.4207. *Gorman*, 302 Mich App at 132-136.

[6] "An unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). However, this Court may consider unpublished opinions "helpful and instructive." *Ally Fin, Inc v State Treasurer*, 317 Mich App 316, 333; 894 NW2d 673 (2016).

absolve [the defendant customer] of [its] threshold duty not to deposit a fraudulent check." *Id.* at 7. Furthermore, the defendant's counterclaim of negligence against the bank for providing such erroneous information was "irrelevant and [did] not absolve [the defendant] of his breach of statutory warranty." *Id.* at 8.

Similarly, in *PNC Bank NA v Martin*, memorandum opinion of the United States District Court for the Western District of Kentucky, issued August 19, 2010 (No. 08-649-JBC), p 2,[7] cited by defendant in support of its arguments, the court concluded that statements by bank employees that a counterfeit check had cleared, even though a mistake, were "immaterial facts." In granting summary judgment for the plaintiff bank on the issue of the defendant's breach of statutory warranty, the court reasoned that "transfer warranties placed the risk of loss on [the customer], regardless of whether [the bank], [the customer], or both of them were at fault." *Id.*

This Court's unpublished decision in *TCF*, along with *PNC Bank*, support defendant's argument that its actions did not fail to adhere to reasonable commercial standards of fair dealing.[8] First, as in *TCF*, plaintiff incurred the "threshold duty not to deposit counterfeit checks" when it transferred the check to defendant. Plaintiff was the only party in this transaction that had all the information regarding the origin and nature of the check and, thus, was the party with the closest contact to the fraudster that "ought to bear the responsibility for the loss occasioned by the [fraud]." *Dominion Bank, NA v Household Bank, FSB*, 827 F Supp 463, 467 (SD Ohio, 1993). Defendant accepted plaintiff's deposit of the check and made funds provisionally available in accordance with the bank's procedures. Defendant notified plaintiff that the check was dishonored within two days of deposit and successfully retrieved most of the wire transfer. There is no evidence in the record that defendant was aware that the check was part of a fraudulent scheme. Therefore, as in *PNC Bank*, McClintic's statement that the check had cleared was immaterial to a determination of whether defendant acted in good faith. *PNC Bank*, unpub op at 2.

Furthermore, the evidence does not involve "advantage-taking" on the part of the bank. See *State Bank of The Lakes v Kansas Bakers Surety Co*, 328 F3d 906, 909 (CA 7, 2003). Plaintiff was a long-time customer of defendant. There was no conceivable reason for defendant to take advantage of plaintiff by deliberately informing it that the check had cleared. Such an action would likely jeopardize a long-term business relationship with a firm that had an account with "more than $2.4 million" on deposit with the bank. Under the meaning of UCC § 4-207, then, the evidence cited by plaintiff does not establish that defendant failed to act with honesty in fact and in accordance with reasonable commercial standards of fair dealing. Thus, the trial court did not err when it granted defendant's motion for summary disposition on the basis that no

---

[7] In this case, the court analyzed Kentucky's version of UCC § 3-416, a similar transfer warranty provision to that at issue here in Article 3 of the UCC.

[8] "When interpreting a uniform act, such as the Uniform Commercial Code, it is appropriate for this Court to look for guidance in the caselaw of other jurisdictions in which the act has been adopted." *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 632; 774 NW2d 332 (2009).

genuine issue of material fact existed as to whether defendant acted in good faith when its employee falsely informed plaintiff that the check had cleared.

Plaintiff's assertion that even if the relevant caselaw does not support its claim, the question of whether defendant took the check in good faith is an issue for the trier of fact, lacks merit. This Court has held that good faith is an "issue[ ] for the trier of fact under conflicting evidence." *Cessna Fin Corp v Warmus*, 159 Mich App 706, 711; 407 NW2d 66 (1987). Here, in contrast to the unpublished decisions cited by plaintiff in support of its arguments, there was no evidence that defendant failed to follow its own procedures in taking the check or that its agent was aware of the nature of the Internet transaction. Therefore, there is no conflicting evidence that requires the issue to be decided by a trier of fact.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer